Matter of Decime v Annucci (2024 NY Slip Op 04854)

Matter of Decime v Annucci

2024 NY Slip Op 04854

Decided on October 3, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 3, 2024

CV-23-1293
[*1]In the Matter of Taj Decime, Petitioner,
v
Anthony J. Annucci, as Acting Commissioner of Corrections and Community Supervision, Respondent.

Calendar Date:September 6, 2024

Before:Garry, P.J., Egan Jr., Reynolds Fitzgerald, Ceresia and Powers, JJ.

Prisoners' Legal Services of New York, Ithaca (Krin Flaherty of counsel), for petitioner.
Letitia James, Attorney General, Albany (Rachel Raimondi of counsel), for respondent.

Egan Jr., J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's request for reconsideration and reinstatement of her prison visitation privileges.
In June 2019, petitioner and her romantic partner — both subjects of an ongoing investigation — were suspected of conspiring to smuggle drugs into the facility at which petitioner's partner then was incarcerated. The evening before a scheduled July 13, 2019 visit, petitioner and an incarcerated individual (subsequently determined not to be petitioner's partner) spoke via telephone and, during that conversation, the incarcerated individual confirmed that petitioner was in possession of four "small items." On the day of the visit, all visitors to the facility were subject to a canine sniff, and a facility canine indicated the presence of a narcotic odor on petitioner's person. No contraband was recovered from petitioner's person, but a search of her purse in the visitor locker area revealed three small latex glove tips covered in blood.[FN1]
Petitioner's partner was charged in a misbehavior report with, among other things, smuggling and, by letter dated July 17, 2019, the facility superintendent advised petitioner that her visitation privileges at all facilities maintained by the Department of Corrections and Community Supervision were suspended indefinitely.[FN2] Petitioner pursued an administrative appeal and, by determination dated August 28, 2019, the superintendent's decision was upheld.[FN3]
Nearly three years later, petitioner sought reconsideration of the August 2019 suspension and the corresponding reinstatement of her visitation privileges (see 7 NYCRR 201.6 [a]). Petitioner's request was denied at the facility level and, by letter dated October 7, 2022, petitioner's administrative appeal was denied upon the ground that the facility superintendent had a reasonable basis for denying petitioner's request. Petitioner then commenced this CPLR article 78 proceeding to challenge respondent's October 2022 determination. Following joinder of issue, Supreme Court, over petitioner's objection, transferred the matter to this Court.
Preliminarily, inasmuch as no hearing was held and the petition does not present a question of substantial evidence, Supreme Court erred in transferring the proceeding to this Court. However, in the interest of judicial economy, we will retain jurisdiction and address the merits of petitioner's claims (see Matter of Mitchell v Rodriguez, 175 AD3d 787, 788 n [3d Dept 2019]). That said, to the extent that petitioner seeks to challenge the initial suspension of her visitation privileges in 2019, the time to do so has long since passed (see CPLR 217 [1]). The sole issue before us, as a result, is whether respondent's denial of petitioner's request for reconsideration/reinstatement of her visitation privileges "was made in violation of lawful procedure, was affected by an error [*2]of law or was arbitrary and capricious or an abuse of discretion" (Matter of Sam v Annucci, 192 AD3d 1485, 1486 [4th Dept 2021] [internal quotation marks and citation omitted]). Should we conclude that respondent's determination is supported by a rational basis, we must sustain it, even if we would have reached a different result (see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; Matter of CDE Elec., Inc. v Rivera, 124 AD3d 1178, 1180 [3d Dept 2015]).
Where, as here, an individual's visiting privileges have been suspended indefinitely, "such person may request a reconsideration at any time after [the suspension] has been in effect for one year, and on an annual basis thereafter, by writing to the superintendent of the facility housing the [incarcerated individual] to be visited" (7 NYCRR 201.6 [a]). Upon receipt, the facility superintendent "shall evaluate [the] request to determine if any factors exist that warrant a modification so as to permit visitation to resume at a specific time in the future" (7 NYCRR 201.6 [b]). In so doing, the superintendent is to consider the incarcerated individual's institutional record, past history of violations and the length of his or her unserved sentence, as well as the existence of any special circumstances or good cause factors (see 7 NYCRR 201.6 [b] [1]-[5]). Should the request be denied, the requesting party retains the right to appeal the superintendent's determination to respondent (see 7 NYCRR 201.6 [d]). The regulations further provide that nothing therein precludes the requesting party "from making an annual request for reconsideration to the superintendent of the correctional facility then housing the [incarcerated individual] to be visited" (7 NYCRR 201.6 [d] [3]).
In denying petitioner's request for reconsideration, respondent cited the "poor custodial adjustment" of petitioner's partner, noting that petitioner's partner had "a history of several misbehavior reports since July 13, 2019" that included incidents of "violent conduct." As for petitioner, respondent noted that the recorded phone call, canine alert and seizure of the glove tips from petitioner's purse reasonably established that petitioner "was in the process of introducing contraband" into the subject facility during her 2019 visit. Finding reasonable cause to conclude that the suspension of petitioner's visitation privileges was "necessary to maintain the safety, security[ ] and good order of the facility," respondent denied petitioner's appeal. We find respondent's determination denying petitioner's request to be rational, particularly in the absence of any special circumstances or other good cause factors. To the extent that petitioner faults respondent for considering additional evidence of alleged disbursements made to her from certain incarcerated individuals shortly before the July 2019 visit, we deem any error in this regard to be harmless (cf. Matter of Perez v Goord, 300 AD2d 956, 957 [3d Dept 2002]). Petitioner's remaining [*3]arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit. Accordingly, respondent's determination is confirmed.
Garry, P.J., Reynolds Fitzgerald, Ceresia and Powers, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: The contents of the glove tips were not tested because the presence of blood rendered them a biohazard.

Footnote 2: Petitioner's partner ultimately was found not guilty of various disciplinary infractions.

Footnote 3: The record on review contains an unsigned order to show cause and unsworn petition purporting to challenge this determination, but there is no indication that petitioner formally sought judicial review thereof.